**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WILLIAM DECKARD, SR.,** <br> **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **STEVEN EMORY, Executor of Estate of** <br> **Kathleen Emory (Deceased),** <br> **STEVEN EMORY,** <br> **CITIZENS BANK,** <br> **WORLDPAY,** <br> **PENN NATIONAL MUTUAL** <br> **CASUALTY INSURANCE COMPANY,** <br> **MICHAEL DANELLO, Agent, Penn** <br> **National Mutual Casualty Insurance** <br> **Company,** <br> **ACLAIM ADJUSTMENT AGENCY INC.,** <br> **GEORGE PAGANO, Agent,** <br> **JANE'S AND JOHN'S DOE 1 THROUGH** <br> **18, and** <br> **SOLE PROPRIETORSHIP('S),** <br> **PARTNERSHIP('S), CORPORATION('S),** <br> **LLC('S), LLP('S) 1 THROUGH 15,** <br> **Defendants.** | **NO.  17-5182** |
| **WILLIAM DECKARD, SR.,** <br> **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **STEVEN EMORY,** <br> **ESTATE OF KATHLEEN EMORY** <br> **(Deceased), Steven Emory, Executor,** <br> **DREW SALAMAN, ESQUIRE,** <br> **DAVID GRUNFELD, ESQUIRE,** <br> **LINDA HEE, ESQUIRE,** <br> **DANIEL DUGAN,** <br> **JANE'S AND JOHN'S DOE 1 THROUGH** <br> **18, and** <br> **SOLE PROPRIETORSHIP('S),** <br> **PARTNERSHIP('S), CORPORATION('S),** <br> **LLC('S), LLP('S) 1 THROUGH 15,** <br> **Defendants.** | **NO.  19-2001** |

DuBois, J.                                                                                        July 13, 2020
                                                **M E M O R A N D U M**

## I.       INTRODUCTION

Plaintiff, William Deckard, Sr., has brought two related cases before this Court (Civil

Action Nos. 17-5182 and 19-2001).  Both cases arise from the administration of the Estate of his

mother, Gloria Deckard, in the Orphans' Court Division of the Court of Common Pleas of

Philadelphia County.

## II.      BACKGROUND

The facts below are drawn from plaintiff's 2nd Amended Complaint (Case No. 17-5182,

Doc. No. 10, filed January 29, 2019), 1st Amended Complaint (Case No. 19-2001, Doc. No. 16,

filed July 31, 2019), the exhibits filed with the complaints, and matters of public record.[1]  The

Court construes the complaints in the light most favorable to the plaintiff, as it must in ruling on

a motion to dismiss.

Plaintiff, William Deckard, Sr., is the son of Jesse and Gloria Deckard.  2nd Am. Compl.

¶ 23.  Beginning in 1966, Jesse Deckard operated an overhead door business at 9911 Northeast

Avenue, Philadelphia, PA.  *Id.* ¶ 27.  After Jesse Deckard passed away in 1974, plaintiff

conceived of and executed a plan to convert the property into a beer distributorship called "Beer

Hut."  *Id.* ¶¶ 31-42.  Plaintiff alleges that he became a co-owner of the building located at 9911

Northeast Avenue in 2002.  *Id.* ¶ 70; 1st Am. Compl. ¶¶ 24-25, Ex. N.

According to plaintiff, his sister, Kathleen Emory, and her husband, Steven Emory,[2]

---

[1] Plaintiff has submitted voluminous exhibits with his Response to Defendant's Daniel Dugan,
Esquire's and David Grunfeld, Esquire's Motions to Dismiss.  The Court may only consider "an exhibit to a
defendant's motion to dismiss if the plaintiff's claims are based on that document and if that document is
indisputably authentic.  *Diener v. Renfrew Centers, Inc.*, 2011 WL 4401720, at *4 (E.D. Pa. Sept. 22, 2011) (citing
*Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[2] Kathleen Emory passed away on August 1, 2016.  2nd Am. Compl. ¶ 3.  The Estate of Kathleen Emory and Steven
Emory as its executor are named as defendants in both cases before this Court.  *Id.*; 1st Am. Compl. ¶ 4.

exploited Gloria Deckard from at least 2009 by, *inter alia*, stealing cash receipts from Beer Hut, gaining access to the accounts and assets of Beer Hut, and withdrawing money from Gloria Deckard's personal accounts.  2nd Am. Compl. ¶¶ 58-61.  Gloria Deckard passed away on December 15, 2012.  *Id.* ¶ 51.  In Gloria Deckard's will, plaintiff was named as a 50 percent beneficiary of the Estate of Gloria Deckard, and Kathleen Emory was named Executrix.  *Id.* ¶ 52.

Plaintiff alleges that he and his mother ran Beer Hut as a silent partnership from May of 1978 through November of 2012.  *Id.* ¶¶ 41-42.  Notwithstanding that claim, on June 6, 2013, the Philadelphia Orphans Court ruled that plaintiff had failed to prove that he had a partnership interest in the Beer Hut business.  *In re Estate of Gloria Deckard*, No. 180 DE of 2013 (Phila. Cty. C.C.P. June 6, 2013).  The Orphans' Court further held that Kathleen Emory, as Gloria Deckard's personal representative, had legal title to the Estate—including the Beer Hut business. *Id.*  That court ordered that plaintiff continue to handle "day-to-day business related decisions and operations" and that Kathleen Emory have "final control over all business operations and decisions."  *Id.*  Kathleen Emory was represented by defendant Daniel Dugan in the Orphans' Court proceedings.  1st Am. Compl. ¶ 18.

Plaintiff alleges that, during this period, Kathleen Emory unlawfully used Gloria Deckard's employer identification number ("EIN") in the administration of Citizens Bank accounts for the Estate and Beer Hut.  2nd Am. Compl. ¶¶ 46, 56, 116.  According to plaintiff, Kathleen Emory also violated an Orphans' Court order directing her to provide an accounting for all Beer Hut funds.  *Id.* ¶ 116.  Plaintiff claims he "warned" both Citizens Bank and the credit card processor, Worldpay, about these allegations in 2013.  *Id.*  ¶¶ 50, 111, 116.

On July 18, 2013, the Orphans' Court determined that the parties were unable to effectively manage the Beer Hut business and appointed a Special Master, Drew Salaman, to

oversee the operation of Beer Hut.  *In re Estate of Gloria Deckard*, No. 180 DE of 2013 (Phila. Cty. C.C.P. July 18, 2013).  On December 23, 2014, Salaman was replaced as Special Master by David Grunfeld.  *In re Estate of Gloria Deckard*, No. 180 DE of 2013 (Phila. Cty. C.C.P. Dec. 23, 2014).  Grunfeld was appointed with the specific mandate to have Beer Hut "evaluated and liquidated at a private or public sale to raise the highest price for [the] estate."  *Id.*  Plaintiff alleges that both Salaman and Grunfeld "conspired to bar" him from the Beer Hut property— acting "without lawful jurisdiction to do so."  1st Am. Compl. ¶ 25.

After Kathleen Emory failed to cooperate with Special Master Grunfeld, Grunfeld informed the Orphans' Court that "in order for the orderly liquidation of Beer Hut to occur, Beer Hut must close immediately."  *In re Estate of Gloria Deckard*, No. 180 DE of 2013 (Phila. Cty. C.C.P. Jan. 30, 2015).  On January 30, 2015, relying on Grunfeld's recommendation, the Orphans' Court ordered that Beer Hut be "closed for all business immediately" and that "Kathleen Emory and other personal [sic], except Special Master, shall vacate said premises and not reenter except with permission and for the purpose of complying with this Decree."  *Id.*  The Orphans' Court authorized Special Master Grunfeld to "take all action he deems necessary and appropriate in the prompt liquidation of the assets of Beer Hut, including but not limited to: (1) liquidating the inventory of Beer Hut in accordance with Pennsylvania Liquor Control Board policies; (2) addressing any licensure issues resulting from the closure of Beer Hut; and (3) retaining the services of a business broker."  *Id.*

By order dated February 12, 2015, the Orphans' Court removed Kathleen Emory as Executrix of the Estate of Gloria Deckard, and thereafter appointed Linda Hee as Administrator of the Estate.  *In re Estate of Gloria Deckard*, No. 180 DE of 2013 (Phila. Cty. C.C.P. Feb. 12, 2015); 1st Am. Compl. ¶ 21.

4

Plaintiff claims the "collective gross abuses of power" by Salaman, Grunfeld, and Hee led to the closure of Beer Hut from February of 2015 to September of 2018 and the "destruction of the warehouse facility's heating system." 1st Am. Compl. ¶ 35. According to plaintiff, that closure resulted in "$300,000 in consequent damages" from loss of revenue, reputation, and clientele. *Id.*

Plaintiff alleges that he learned in 2016 that Kathleen and Steven Emory had unlawfully settled an insurance claim stemming from tornado damage sustained by Beer Hut in 2011 with Pennsylvania National Mutual Casualty Insurance Company, Michael Danilla,[3] Penn National Security Insurance Company (collectively, "the Penn National defendants"), Aclaim Adjustment Agency Inc., and George Pagano (collectively, "the Aclaim defendants"). 2nd Am. Compl. ¶¶ 119-20. Plaintiff claims that this settlement was reached without his approval. *Id.*

**A.  Civil Action No. 17-5182**

Plaintiff initiated the first of the instant actions, Civil Action No. 17-5182, on November 17, 2017. Plaintiff filed a 1st Amended Complaint in that case on February 15, 2018 (Doc. No. 2). After failing to make service of the 1st Amended Complaint within 90 days, as required by Federal Rule of Civil Procedure 4(m), this Court ordered plaintiff to serve the 1st Amended Complaint or suffer dismissal of the case (Doc. No. 3, filed Nov. 21, 2018). On January 28, 2019, this Court granted plaintiff's Petition for Leave to File 2nd Amended Complaint (Doc. No. 9). In the 2nd Amended Complaint, plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, by Steven Emory, individually, and Steven Emory, Executor of the Estate of Kathleen Emory ("the Emory defendants") (Counts

---

[3] Defendants are incorrectly identified in the Amended Complaint as "Penn National Mutual Casualty Insurance Company" and "Michael Danello." Penn Nat'l Defs.' Mot. Dismiss 1; Pl.'s Resp. Penn Nat'l Defs.' Mot. Dismiss 1-2.

I & II); a violation of fiduciary duty by Citizens Bank (Count III), a violation of fiduciary duty by Worldpay (Count IV); and violations of fiduciary duties by the Penn National defendants and the Aclaim defendants (Count V).[4]

The Penn National defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint on April 22, 2019, to which plaintiff responded on June 3, 2019.  Citizens Bank filed a Motion to Dismiss on May 3, 2019, to which plaintiff responded on June 4, 2019.  Worldpay filed a Motion to Dismiss on May 23, 2019, to which plaintiff responded on June 14, 2019.  The Aclaim defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint on June 7, 2019, to which plaintiff responded on July 14, 2019.  The Aclaim defendants replied on July 24, 2019, and plaintiff filed a Sur Reply on August 2, 2019.  On August 16, 2019, plaintiff was denied leave to further amend his 2nd Amended Complaint in Civil Action No. 17-5182, pending consideration of the motions to dismiss filed in the case (Doc. No. 66).

The motions are thus ripe for decision.

**B.  Civil Action No. 19-2001**

While Civil Action No. 17-5182 was pending, plaintiff initiated a second action in this Court, Civil Action No. 19-2001, on May 7, 2019.  Plaintiff's Complaint in that action did not assert any specific claims against the named defendants, but stated that "Plaintiff will Amend and file within Complaint on or before July 6, 2019."  Compl. ¶ 15.  In that Complaint, plaintiff sought an injunction to prevent a May 9, 2019 Orphans' Court hearing, *id.* ¶ 16, and filed an accompanying Emergency Petition for Stay of Philadelphia Orphan's Court in Matter of Estate of Gloria A. Deckard (Doc. No. 2).  The Emergency Petition was denied by this Court on May 9,

---

[4] Plaintiff also asserted a claim of breach of fiduciary duty against Drew Salaman in the 2nd Amended Complaint (Count VI) in Civil Action No. 17-5182.  Plaintiff voluntarily withdrew this claim against Salaman on April 19, 2019 (Doc. No. 11).

2019 (Doc. No. 4).

Plaintiff did not file the 1st Amended Complaint in Civil Action No. 19-2001 until July 31, 2019 (Doc. No. 16).  The 1st Amended Complaint seeks to incorporate by reference the allegations set forth in Civil Action No. 17-5182 and alleges violations of RICO, 18 U.S.C. § 1961 *et seq*., by the Emory defendants, Daniel Dugan, Drew Salaman, David Grunfeld, and Linda Hee (Count I); violations of 27 U.S.C. § 201 *et seq*. and the First, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 by Salaman, Grunfeld, and Hee (Count II);[5] violations of 27 U.S.C. § 201 *et seq*. and the First, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 by Hee (Count III).

Drew Salaman filed a Motion to Dismiss Amended Complaint on September 24, 2019, to which plaintiff responded on October 21, 2019.  Daniel Dugan filed a Motion to Dismiss the First Amended Complaint on November 5, 2019, to which plaintiff responded on January 8, 2020.  David Grunfeld filed a Motion to Dismiss First Amended Complaint on November 18, 2019, to which plaintiff responded on January 8, 2020.  The motions are thus ripe for decision.

## III.   LEGAL STANDARD

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of jurisdiction over the subject matter" of a case.  The plaintiff has the burden of establishing subject matter jurisdiction.  *See Carpet Group Int'l v. Oriental Rug Imp. Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  "Without jurisdiction the court cannot proceed at all in any case."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation omitted).

---

[5] Defendant Linda Hee is also named as a defendant in Count II despite having identical claims separately brought against her in Count III.

Challenges to the Court's subject matter jurisdiction may be either facial or factual. *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018). A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Id.* When ruling on a facial attack, the Court "considers only the complaint, viewing it in the light most favorable to the plaintiff." *Id.* By contrast, a factual attack is an argument that challenges the "factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). When ruling on a factual attack, the Court weighs the evidence and must satisfy itself as to the existence of its power to hear the case. *Id.*

**B. Rule 12(b)(6)**

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. *Liou v. Le Reve Rittenhouse Spa, LLC*, No. CV 18-5279, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019) (DuBois, J.). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  Nevertheless, a court may dismiss a claim with prejudice based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

## IV.   CIVIL ACTION NO. 17-5182

In Civil Action No. 17-5182, plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, by the Emory defendants (Counts I & II); a violation of fiduciary duty by Citizens Bank (Count III), a violation of fiduciary duty by Worldpay (Count IV); and violations of fiduciary duty by the Penn National defendants and the Aclaim defendants (Count V).

Presently before the Court are motions to dismiss filed by Worldpay, Citizens Bank, the Penn National defendants, and the Aclaim defendants.  For the reasons set forth below, defendants' motions are granted.  The Court addresses the claims brought against each of these defendants in turn.

### A.  Count III: Plaintiff's Violation of Fiduciary Duty Claim Against Citizens Bank

In Count III of the 2nd Amended Complaint, plaintiff alleges that Citizens Bank had an obligation to exercise a duty of ordinary care when opening and overseeing the administration of client accounts.  2nd Am. Compl. ¶ 110.  This duty was allegedly violated in the following ways: (1) Citizens Bank ignored plaintiff's warnings that the Emory defendants were unlawfully using Gloria Deckard's EIN and violating a 2013 Orphans' Court order to account for all funds involving Beer Hut; (2) Citizens Bank froze plaintiff's Beer Hut accounts and authorized

9

defendant Kathleen Emory to "cease all of Plaintiff's funds in said accounts"; (3) Citizens Bank enabled the Emory defendants to unlawfully convert Beer Hut assets.  *Id.* ¶¶ 111-13.

As a matter of law, "[a] bank/customer relationship is not a fiduciary one."  *Waye v. Commonwealth Bank*, 846 F. Supp. 321, 325 (M.D. Pa. 1994).  In order for a fiduciary relationship to arise, there must be control exercised by the bank over the customer's business affairs.  *See Bucci v. Wachovia Bank, N.A.*, No. 08-1478, 2009 WL 1740503, at *3 (E.D. Pa. June 17, 2009).  The Court thus concludes that, because plaintiff has not alleged that Citizens Bank exercised any control over his business affairs, he fails to state a claim for breach of fiduciary duty against Citizens Bank.

The Court dismisses plaintiff's claim against Citizens Bank for breach of fiduciary duty in Count III with prejudice.  This Court has already denied plaintiff's previous request to further amend his Complaint in this case (Doc. No. 66, filed August 20, 2019).  Moreover, this case was initiated three years ago, and plaintiff has already amended his Complaint twice.  The Court thus declines to grant plaintiff a third opportunity to correct the deficiencies in his claims.  *See Lorenz*, 1 F.3d at 1414 (affirming denial of leave to amend based on unreasonable delay where three years have elapsed since the action was filed and two years after the complaint was amended for a second time).

### B.  Count IV: Plaintiff's Violation of Fiduciary Duty Claim Against Worldpay

In Count IV of the 2nd Amended Complaint, plaintiff alleges that Worldpay violated an obligation to exercise a duty of ordinary care when opening client accounts.  2nd Am. Compl. ¶ 110.  That duty was allegedly violated in the following ways: (1) Worldpay "either transacted with [the Emory defendants] knowing Emorys' . . . accounts were unlawfully using decedent Gloria Deckard's EIN . . . or [the Emory defendants] and Worldpay were using [plaintiff's] EIN"

10

without his knowledge; (2) Worldpay ignored plaintiff's warnings that the Emorys were violating the 2013 Orphans' Court order to account for all funds involving the Beer Hut; (3) Worldpay enabled the Emory defendants to unlawfully convert Beer Hut assets.  *Id.* ¶ 111, 115-17.

In its Motion to Dismiss, Worldpay invokes a forum selection clause in the Terms and Conditions incorporated into the Customer Processing Agreement signed by plaintiff and Kathleen Emory.  Def. Worldpay's Mot. Dismiss 1.  The forum selection clause states: "In connection with any dispute relating to this Agreement, Customer and all individuals executing this Agreement in any capacity hereby consent to the exclusive jurisdiction of, and venue in, the courts in Atlanta, Georgia or Fulton County, Georgia."  *Id.*, Ex. B ¶ 11.3.[6]  Worldpay moves for dismissal of Count IV pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis of the forum selection clause.  *Id.* at 4.[7]

The Third Circuit has held that "a Rule 12(b)(6) dismissal is . . . an acceptable means of enforcing [a valid forum selection clause]"—even where the clause allows for suit in "either a state or federal forum."  *Podesta v. Hanzel*, 684 F. App'x 213, 216 (3d Cir. 2017) (citing *Salovaara v. Jackson Nat'l Life Ins. Comp.*, 246 F.3d 289, 298 (3d Cir. 2001)).  Forum selection clauses are "'*prima facie* valid and should be enforced' unless a plaintiff can demonstrate that 'enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons

---

[6] The Court may properly consider the Customer Processing Agreement attached to Worldpay's Motion as plaintiff's claim for breach of fiduciary duty arises out of the Agreement between the parties.  *See Pension Ben. Guar. Corp. v. White Consol. Indus, Inc.*, 998 F.2d 1192, 1195 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

[7] The Court interprets the forum selection clause as broad enough to cover a transfer to a district court in Georgia. Forum selection clauses that specify courts "in" a state, rather than courts "of" a state, have been interpreted as permitting jurisdiction in both state and federal courts in the named state.  *See New Jersey v. Merrill Lynch & Co., Inc.*, 640 F.3d 545, 548-59 (3d Cir. 2011).  However, because this issue has not been briefed, the Court does not address that issue.

as fraud or overreaching.'" *Id.* (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

In response to Worldpay's Motion, plaintiff contends that the forum selection clause should not be enforced because his signature was forged. Pl.'s Resp. Def. Worldpay's Mot. 2-5. However, a "party who relies on fraud or forgery has the burden in the first instance of proving the facts upon which the alleged fraud or forgery is based, and these facts must be established by evidence that is clear, direct, precise, and convincing." *CoActiv Capital Partners, Inc. v. Feathers*, No. 08-5506, 2009 WL 1911673, at *3 (E.D. Pa. July 1, 2009) (quoting *Carlson v. Sherwood*, 206 A.2d 19, 20 (Pa. 1965) (internal quotation marks omitted)). "Neither a 'bald allegation of forgery' nor 'testimony that [one] cannot remember signing [a document], nor the combination of both' constitutes clear and convincing evidence of forgery." *Id.* (quoting *Jackson v. Allstate Ins. Co.*, 441 F. Supp. 2d 728, 734 (E.D. Pa. 2006)); *see also Healthcare Servs. Grp., Inc. v. Moreta*, No. 19-2260, 2019 WL 6117353, at *4 (E.D. Pa. Nov. 15, 2019) (DuBois, J.).

The Court thus concludes that plaintiff's allegations of forgery are insufficient to invalidate the Customer Processing Agreement and that the forum selection clause in that Agreement is valid and enforceable. Based on the forum selection clause, the Court grants Worldpay's Motion to Dismiss and dismisses all claims against Worldpay in Count IV without prejudice to plaintiff's right to file such claims in the proper venue.

### C. Count V: Plaintiff's Violation of Fiduciary Duty Claim Against the Penn National Defendants and the Aclaim Defendants

Plaintiff alleges that the Penn National defendants and Aclaim defendants unlawfully reached a settlement agreement with the Emory defendants regarding an insurance claim stemming from tornado damage sustained by Beer Hut in 2011. 2nd Am. Compl. ¶ 119-20.

12

Plaintiff avers that the Penn National and Aclaim defendants knew that the Emory defendants were "attempting to defraud the real property's co-owner, Plaintiff, of Plaintiff's 50% share of proceeds from any settlement of the 2011 tornado damage insurance claim." *Id.* ¶ 119.  As such, plaintiff alleges that the Penn National defendants and Aclaim defendants both violated fiduciary duties owed to him. *Id.* ¶¶ 118-22.  The Court addresses the motions to dismiss filed by the Penn National defendants and the Aclaim defendants in turn.

    *i.*   *Motion to Dismiss of the Penn National Defendants*

In their Motion to Dismiss, the Penn National defendants argue that plaintiff fails to plead a basis for a fiduciary duty owed to him.  Penn Nat'l Defs.' Mot. Dismiss 6.  Defendants explain that Penn National Security issued a policy to plaintiff's mother, Gloria Deckard, and that plaintiff was not a named insured. *Id.* at 5.  Defendants attach the insurance policy in question to their Motion, which names as the insured: "Beer Hut Gloria Deckard DBA." *Id.*, Ex. C.[8]

Under Pennsylvania law, "an insurer does not have a fiduciary duty to an insured, except in limited circumstances such as where the insurer asserts a right to defend claims against the insured." *Hayes v. Am. Int'l Grp.*, No. 09-2874, 2014 WL 3746813, at *18 (E.D. Pa. July 29, 2014).  Moreover, "the existence of a fiduciary duty . . . is predicated upon an *existing* contractual relationship between the insurer and the insured." *Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F.Supp.2d 371, 380 (E.D. Pa. 1998); *see also In re Prudential Ins. Co. of America Sales Practices Litig.*, 975 F. Supp. 584, 617 (D.N.J. 1996) (emphasizing that the "the contract and the duties *it* imposes can give rise to a fiduciary relationship" between insurer and insured "under special circumstances.") (quoting *Garvey v. National Grange Mut. Ins. Co.*, No. 95-0019, 1995

---

[8] The Court may properly consider the insurance policy attached to the Penn National defendants' Motion as plaintiff's claim for breach of fiduciary duty arises out of the policy and the policy is undisputedly authentic. *See Pension Ben. Guar. Corp.*, 998 F.2d at 1195.

WL 115416, *4 (E.D. Pa. Mar. 16, 1995)).  To determine who is an insured under a given policy,

the Court "must look to the terms of the [p]olicy."  *Myers v. GEICO Cas. Co.*, No. 17-3933,

2019 WL 175126, at *4 (E.D. Pa. Jan. 10, 2019) (citing *Klinger v. State Farm Mut. Auto. Ins.*

*Co.*, 895 F.Supp. 709, 715 (M.D. Pa. Aug. 21, 1995)).

    As plaintiff is not a named insured under the policy at issue, the Court concludes that

plaintiff has failed to state a claim for breach of fiduciary duty.  Notwithstanding his alleged co-

ownership of the underlying asset, plaintiff cannot claim that the defendants owed him a

fiduciary duty or that he was entitled to recover under the terms of the policy.  *See Guardo v.*

*Buzzuro*, No. 1905 EDA 2017, 2018 WL 3133679, at *3 (Pa. Super. Ct. 2018) ("Pennsylvania

law is well-settled that a party's right to recover under an insurance policy is determined by the

terms of the policy and not ownership of the underlying insured asset.") (citing *Bryant v. Girard*

*Bank*, 517 A.2d 968, 978 (Pa. Super. Ct. 1986)).  The Court thus grants the Penn National

defendants' Motion to Dismiss.  The Court dismisses plaintiff's claim of breach of fiduciary duty

against the Penn National defendants in Count V with prejudice because amendment would be

futile.

ii.     *Motion to Dismiss of the Aclaim Defendants*

    As with the Penn National defendants, plaintiff alleges that public adjuster Aclaim

Adjustment Agency, Inc. and its agent George Pagano unlawfully settled the insurance claim

stemming from tornado damage suffered by Beer Hutt in 2011 and thus violated a fiduciary duty

owed to plaintiff.  2nd Am. Compl. ¶¶ 119-20.  In their Motion to Dismiss, the Aclaim

defendants contend that, under Pennsylvania law, they do not owe a fiduciary duty to plaintiff.

Aclaim Defs.' Mot. Dismiss 6.  Defendants attach the contract signed by Gloria Deckard to

14

retain the services of Aclaim.  *Id.*, Ex. B.[9]  The Aclaim defendants argue that, because plaintiff

had no contractual relationship with them and never served as the executor of the Estate of

Gloria Deckard, no fiduciary duty ever existed between plaintiff and the Aclaim defendants.  *Id.*

at 6-7.  The Court agrees with the Aclaim defendants on this issue.

Under Pennsylvania law, where the parties have "simply entered into a commercial,

arms-length contract with one another," that relationship is not "sufficient to create a fiduciary

relationship."  *Grimm v. Discover Fin. Servs.*, Nos. 08-747, 08-832, 2008 WL 4821695, at *13

(W.D. Pa. Nov. 4, 2008) (quoting *Grimm v. Wash. Mut. Bank*, No. 08-0828, 2008 WL 2858377,

at *5 (W.D. Pa. July 22, 2008)).  Rather, a fiduciary duty exists where there is a "special

relationship" that involves "confidentiality, the repose of special trust or fiduciary

responsibilities."  *Wash. Mut. Bank*, 2008 WL 2858377 at *5 (citing *eToll Inc. v. Elias/Savion

Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002)); *see also Universal Elec. Corp. v. Baldwin*, No.

17-0842, 2018 WL 3707423 at *14 ("Under Pennsylvania law, a fiduciary relationship exists

'when one person has reposed a special confidence in another to the extent that the parties do not

deal with each other on equal terms, either because of an overmastering dominance on one side

or weakness, dependence or justifiable trust, on the other.'") (quoting *In re Clark's Estate*, 359

A.2d 777, 781 (Pa. 1976)).  Plaintiff has failed to allege any contractual relationship between

himself and the Aclaim defendants—let alone the kind of special relationship required for a

fiduciary duty to arise between contracting parties under Pennsylvania law.  The Court thus

grants the Aclaim defendants' Motion and dismisses plaintiff's claims for breach of fiduciary

duty against the Aclaim defendants in Count V with prejudice because amendment would be

futile.

---

[9] The Court may properly consider the contract attached to the Aclaim defendants' Motion as plaintiff's claim for breach of fiduciary duty arises out of that contract.  *See Pension Ben. Guar. Corp.*, 998 F.2d at 1195.

### D.  Counts I & II: Plaintiff's RICO Claims

Plaintiff fails to state in the 2nd Amended Complaint whether he asserts the RICO claims in Counts I and II against defendants other than the Emory defendants.  In particular, it is unclear whether these claims are meant to be brought against the Penn National and Aclaim defendants. Plaintiff alleges that the Penn National and Aclaim defendants committed wire and mail fraud in conjunction with the settlement of the 2011 insurance claim, and includes these allegations as "predicate acts" to the RICO violations.  2nd Am. Compl. ¶ 79.  However, plaintiff's *ad damnum* clauses in Counts I and II seek judgment against only the Emory defendants.

To the extent that plaintiff sets forth RICO claims against the Penn National defendants and Aclaim defendants, these allegations lack the particularity required under Federal Rule of Civil Procedure 9(b) and are thus dismissed.  Plaintiff offers only blanket allegations of fraud contained in "all correspondence" amongst defendants between 2011 and 2016.  *Id.* ¶ 83.  The Third Circuit has made clear that, where plaintiffs seek to "rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  *Id.* at 224 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).  In particular, a plaintiff "must allege who made a misrepresentation to whom and the general content of the misrepresentation."  *Id.*

The Court concludes that plaintiff has failed to plead his RICO claims against the Penn National and Aclaim defendants with sufficient particularity and dismisses all such claims with

prejudice.  As discussed *supra*, the Court declines to grant plaintiff a third opportunity to amend his complaint.  *See Lorenz*, 1 F.3d at 1414 (affirming denial of leave to amend based on unreasonable delay where three years have elapsed since the action was filed and two years after the complaint was amended for a second time).

V.      **CIVIL ACTION NO. 19-2001**

In Case No. 19-2001, plaintiff alleges violations of RICO, 18 U.S.C. § 1961 *et seq*., by the Emory defendants, Dugan, Salaman, Grunfeld, and Hee (Count I); violations of 27 U.S.C. § 201 *et seq.* and the First, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 by Salaman, Grunfeld, and Hee (Count II); violations of 27 U.S.C. § 201 *et seq.* and the First, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 by Hee (Count III).

Presently before the Court are motions to dismiss filed by Salaman, Dugan, and Grunfeld. For the reasons set forth below, defendants' motions are granted.  The Court addresses each of the claims brought against these defendants in turn.

A.  **Count I: Plaintiff's RICO Claims Against Salaman, Dugan, and Grunfeld**

In the 1st Amended Complaint, plaintiff alleges that, from at least 2012, the Emory defendants committed, *inter alia*, identity fraud, mail fraud, wire fraud, and bank fraud, "and each . . . Defendant actively, knowingly and willingly participated in, and/or aided and abetted, said violations."  1st Am. Compl. ¶ 54.  Specifically, plaintiff claims that the Emory defendants' "RICO enterprise" was "up and running since at least 2008" and committed, *inter alia*, the commingling of estate and non-estate assets, and "theft and embezzlement from the Estate and fraudulent takeover and diminution of Beer Hut."  *Id.* ¶¶ 39-40, 42, 49.  Plaintiff states that Salaman and Grunfeld oversaw the commingling of estate and non-estate assets by the RICO enterprise and allowed the "thefts of Social Security Numbers and EIN's of Decedent Gloria

Deckard and Plaintiff." *Id.* ¶¶ 30, 41.  Plaintiff further claims that Dugan "aid[ed] and abet[ed]" the RICO enterprise by accepting money for legal services from "a Beer Hut business account with EIN owned by [Gloria Deckard]" and failing to counsel the Emory defendants that bank accounts owned by Gloria Deckard could not be used after her death. *Id.* ¶¶ 17-19.  Finally, according to plaintiff, Salaman, Grunfeld, and Dugan "supervised, aided and abetted" the Emory defendants in using plaintiff's EIN from 2013 through 2015.  *Id.* ¶ 17.

Grunfeld, Dugan, and Salaman contend that plaintiff fails to state a claim under RICO. Grunfeld Mot. Dismiss 20; Dugan Mot. Dismiss 1; Salaman Mot. Dismiss 5.  In particular, Grunfeld argues that plaintiff fails to identify a distinct RICO enterprise separate from the individual defendants and the alleged racketeering activity.  Grunfeld Mot. Dismiss 25.  Grunfeld further contends that plaintiff fails to allege predicate acts with the particularity required under Rule 9(b).  *Id.*  The Court agrees with defendants that plaintiff fails to state a claim for violations of RICO.

The Court concludes that plaintiff fails to identify the subsection of RICO on which his claims are based, *see Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir. 1991) (outlining the four subsections of 18 U.S.C. § 1962), and does not allege qualifying predicate acts with sufficient particularity.  In order to state a civil RICO claim upon which relief may be granted, plaintiff must "allege facts identifying the conduct of any individually-named Defendant establishing that he or she committed a prohibited racketeering activity that poses a threat of criminal activity."  *Liggett v. Borough of Brownsville*, No. 14-1086, 2015 WL 2238605, at *12 (W.D. Pa. May 12, 2015).  Where the predicate acts identified are based in fraud, plaintiff must plead with sufficient particularity pursuant to Rule 9(b).  *See, e.g.*, *Ottilio v. Valley Nat. Bancorp*, 591 F. App'x 167, 168 (3d Cir. 2015) ("Although [plaintiff] alleged mail or wire fraud as a

predicate act, he did not provide any specificity regarding the purpose of the wires or mailings; nor did he allege who sent them, when they were sent, or how they fit into the purported fraudulent scheme.").  As in Civil Action No. 17-5182, plaintiff fails to allege mail and wire fraud with the particularity required under Rule 9(b).

Although plaintiff provides more specificity in his allegations and accompanying exhibits regarding the alleged identity fraud involving the use of his EIN, *see* 1st Am. Compl. Ex. D, he asserts only that Dugan, Salaman, and Grunfeld "supervised, aided and abetted" the Emory defendants' commission of this alleged fraud, *id.* ¶¶ 17-19.  Courts have held that "defendants cannot be held liable" under RICO "for aiding and abetting another person's predicate acts."  *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, MDL No. 1712, 2006 WL 1531152 (E.D. Pa. June 2, 2006) (citing *Pa. Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 843 (3d Cir. 2000)).  Moreover, to the extent plaintiff attempts to allege that Dugan, Salaman, and Grunfeld directly participated in the commission of the alleged identity fraud by "supervis[ing]" the Emory defendants, 1st Am. Compl. ¶ 17, he has only pled vague and conclusory allegations regarding their role or involvement in the fraud that fail to satisfy Rule 9(b)'s particularity requirement.  *See, e.g.*, *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (allegations under RICO that misrepresentations were made "under the supervision" of the defendants, without specifically alleging each defendant's role, failed to satisfy Rule 9(b)).  In response to Dugan and Grunfeld's motions, plaintiff concedes that the 1st Amended Complaint's RICO allegations fail to state a claim with sufficient particularity under Rule 9(b), stating that "undersigned counsel has learned of the failure to identify in the body of the Complaint, or include in Exhibits, of the . . . 1st Amended Complaint, sufficient samplings of unlawful financial transaction(s) by Defendant(s) that Plaintiff has alleged."  Pl.'s Resp. Dugan

& Grunfeld's Mots. 12-14.

Not only has plaintiff failed to plead the commission of predicate acts with sufficient particularity, he has not identified a distinct RICO enterprise. An "enterprise" under the RICO statute "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Construing the 1st Amended Complaint in the light most favorable to plaintiff, he has alleged an association-in-fact enterprise. *See Boyle v. United States*, 556 U.S. 938, 944 (2009). An association-in-fact enterprise must have "structure, continuity, and distinctness." *Valcom, Inc. v. Vellardita*, No. 13-3025, 2014 WL 1628431, at *5 (D.N.J. April 23, 2014). With regard to structure, there must be "'some sort of structure . . . within the group for the making of decisions, whether it be hierarchical or consensual. There must be some mechanism for controlling and directing the affairs of the group on an on-going, rather than ad hoc, basis.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 365 (3d Cir. 2010) (quoting *United States v. Riccobene*, 709 F.2d 214, 222 (3d Cir. 1983)). With regard to distinctness, the association-in-fact enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Id.* (internal quotations omitted). The Court concludes that plaintiff has failed to allege either of these critical elements—structure and distinctness—and has instead merely identified an "enterprise" that is indistinguishable from the pattern of activity in which it allegedly engaged. *See, e.g.*, *Fidelity Nat. Title Ins. Co. v. Craven*, No. 12-4306, 2013 WL 3778388, at *7 (E.D. Pa. July 18, 2013) (dismissing RICO claims where there was nothing in the complaint "to suggest that the . . . individuals had any function wholly unrelated to the fraudulent activity claimed in this case.").

Because of the admitted deficiencies in his 1st Amended Complaint, plaintiff requests

permission to amend his Complaint again.  Pl.'s Resp. Dugan & Grunfeld's Mots. 12-14.  In

requesting leave to further amend his Complaint, plaintiff states that he first learned that Dugan

and Salaman were "intimately involved in discussions with Worldpay and Citizens Bank in

arranging for Plaintiff's EIN . . . to be used without Plaintiff's knowledge or permission" in May

of 2019—two months *before* he filed his 1st Amended Complaint.  Resp. Dugan and Grunfeld

Mots. Dismiss 8.  Rather than excuse plaintiff's failure to state a claim with sufficient

particularity, this fact militates against granting him leave to amend again.  *See Lorenz*, 1 F.3d at

1414 (affirming denial of leave to amend where proposed additional factual allegations were

available to plaintiff before prior amendments).  The Court thus denies plaintiff's request to

amend the 1st Amended Complaint again.  Plaintiff has been on notice of his failure to

sufficiently plead RICO violations with the particularity required by Rule 9(b) and has failed to

correct those deficiencies.  *See Lorenz*, 1 F.3d at 1414 (denial of leave to amend proper where

"repeated failures to cure the deficiency by amendments previously allowed").  Based on the

foregoing, the Court dismisses all claims against Grunfeld, Dugan, and Salaman in Count I with

prejudice.

**B. Count II: Plaintiff's Claims Against Salaman and Grunfeld under 27 U.S.C. §
201 *et seq.* and the First, Fifth, and Fourteenth Amendments Pursuant to 42
U.S.C. § 1983**

Plaintiff provides no specific allegations under Count II.  He alleges that "as discovery

proceeds" he will be able to "point out more succinctly each of the discreet infractions" and

"further amend this Complaint."  1st Am. Compl. ¶ 57.  As defendant Grunfeld persuasively

argues in his Motion to Dismiss, the allegations plaintiff makes in his 1st Amended Complaint

that might support the claims under Count II implicate either the *Rooker-Feldman* doctrine or the

probate exception.  Grunfeld Mot. Dismiss 12, 14.  Moreover, as both Grunfeld and Salaman

argue, they are entitled to immunity for the judicial tasks they undertook as Special Masters pursuant to the orders of the Orphans' Court.  Salaman Mot. Dismiss 6-7; Grunfeld Mot. Dismiss 8-12.

The following allegations are made with respect to these claims in the 1st Amended Complaint: Grunfeld violated a fiduciary duty by "failing to expose" the unlawful use of plaintiff's and Gloria Deckard's EINs; Salaman and Grunfeld failed to provide an accounting ordered by the Orphans' Court, seized plaintiff's "non-estate, non-probate real property," and committed abuses of power that led to Beer Hut's closure and revenue loss; Salaman and Grunfeld lacked jurisdiction or authority to seize and distribute to themselves insurance proceeds owned by plaintiff as "Beer Hut partner until his Mother's death"; and Salaman and Grunfeld oversaw the unlawful sale of Beer Hut and inventory owned by plaintiff, the unlawful transfer of the Estate's Pennsylvania Liquor Control Board license to Kathleen Emory, and the change of the distributorship's mailing address.  1st Am. Compl. ¶¶ 22, 24, 29-30, 32, 34-35, 37-38.

> i.    *Probate Exception*

The probate exception is a jurisdictional limitation that applies when "a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court."  *Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 227 (3d Cir. 2008).  Under the probate exception, "claims regarding the adjudication of an estate" or "the executor[']s mismanagement of an estate" are not justiciable in federal court.  *Schneler v. Zitomer*, No. 13-4370, 2015 WL 115569, at *5 (E.D. Pa. Jan. 8, 2015).

The Court concludes that the probate exception bars claims related to alleged breaches of fiduciary duties by court-appointed officers in failing to expose the Emory defendants' actions

and to provide an accounting as ordered by the Orphans' Court.  While such claims may appear on the surface to seek the kind of *in personam* relief that is outside of the probate exception's reach, the Third Circuit has cautioned against "making this determination based only upon the 'surface' of the claims alleged." *Luellen v. Luellen*, 972 F. Supp. 2d 722, 728 (W.D. Pa. 2013) (quoting *Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 229-30 (3d Cir. 2008)).  In this case, a "closer examination of the claims asserted, and what would be involved in adjudicating them, reveals that they inherently implicate" the probate exception.  *Id.*  Plaintiff asks the Court to involve itself in the administration of his mother's Estate and evaluate Kathleen Emory's management of the Beer Hut business as Executrix of that Estate—a claim which is not justiciable in federal court.  *See, e.g.*, *Luellen*, 972 F. Supp. 2d at 728-29 (dismissing claims that money was stolen from a joint bank account owned by the plaintiff and the executrix because it would require determining the plaintiff's entitlements under a will); *Schneler*, 2015 WL 115569 at *5 (applying the probate exception where the plaintiff's claims "call[ed] into question the Orphans' Court's adjudication of the estate and outright accus[ed]" the executrix of "disinheriting the plaintiff through . . . self-dealing."); *Bosley v. Bosley*, No. 07-1380, 2008 WL 2048665, at *3 (M.D. Pa. May 12, 2008) ("[C]ourts have held that an action requesting an accounting generally falls within the ambit of 'direct interference with the assets of an estate.'") (quoting *Martz v. Braun*, 266 F. Supp. 134, 138 (E.D. Pa. 1997)).[10]

Accordingly, the Court concludes that any claims in Count II based on alleged breaches of fiduciary duties by Salaman and Grunfeld in failing to expose the Emory defendants' actions and to provide an accounting are barred under the probate exception.

---

[10] Plaintiff argues that the probate exception should not apply because the Orphans' Court allegedly lacked jurisdiction over the Beer Hut property and the "court must have jurisdiction" for the exception to apply.  Resp. Dugan and Grunfeld Mots. Dismiss 3-4.  That is an issue that should have been addressed in the Orphans' Court.  It does not affect this Court's application of the probate exception.

ii.      *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine stands for "the principle that federal district courts lack

jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining*

*& Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). "There are four

requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff

lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court

judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the

plaintiff is inviting the district court to review and reject the state judgments." *Id.* at 166.

"An attack to subject matter jurisdiction based on the *Rooker–Feldman* doctrine is a

factual attack." *Shawe v. Pincus*, 265 F. Supp. 3d 480, 484 (D. Del. 2017). When applying the

doctrine, "a court may look beyond the pleadings in the complaint." *Flamer v. Wells Fargo*

*Bank, N.A.*, No. 18-11414, 2019 WL 2082961, at *3 (D.N.J. May 13, 2019). In particular, a

court "may take judicial notice of the record from a previous court proceeding between the

parties." *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) (citing *Oneida*

*Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988)).

The Court concludes that plaintiff's remaining allegations against Grunfeld and Salaman

are barred by the *Rooker-Feldman* doctrine as they relate to injuries resulting from the Orphans'

Court's judgments and invite this Court's review of those judgments. The seizure and sale of the

Beer Hut business and its inventory was ordered by the Orphans' Court on January 30, 2015.

*See In re Estate of Gloria Deckard*, No. 180 DE of 2013 (Phila. Cty. C.C.P. Jan. 30, 2015). The

Orphans' Court also ordered that Kathleen Emory and persons other than the Special Master

vacate the premises and "not reenter except with permission." *Id.* Plaintiff's claims based on

those decisions by the Orphans' Court are barred under the *Rooker-Feldman* doctrine. 1st Am.

Compl. ¶¶ 36, 38.

Moreover, plaintiff's claims related to his alleged entitlement to insurance proceeds as "Beer Hut partner" are also barred by the *Rooker-Feldman* doctrine.  In asserting that claim, plaintiffs asks this Court to reverse the Orphans' Court decision of June of 2013 that plaintiff had no partnership interest in the Beer Hut business.  *See In re Estate of Gloria Deckard*, No. 180 DE of 2013 (Phila. Cty. C.C.P. June 6, 2013).  *Id.* ¶ 29.  Plaintiff cannot seek review of that decision in this Court.

Plaintiff contends that *Rooker-Feldman* is inapplicable in this case because he has not "lost" in the Philadelphia Orphans' Court estate action.  Resp. Dugan and Grunfeld Mots. Dismiss 2.  Plaintiff claims that the "Estate case today remains open…, no Final Order has issued and all Decrees and Orders in this state court matter remain interlocutory." *Id.* at 2-3.  However, the Third Circuit has repeatedly affirmed the application of the doctrine even where "state-court proceedings had not yet come to an end before the federal action commenced." *Shawe v. Pincus*, 265 F. Supp. 3d 480, 489-90 (D. Del. 2017) (collecting cases).  Thus, the alleged interlocutory nature of the Orphans' Court's orders is irrelevant.

For the foregoing reasons, any claims in Count II of the 1st Amended Complaint based on plaintiff's allegations against Grunfeld and Salaman regarding their actions as court-appointed Special Masters are barred under the *Rooker-Feldman* doctrine.

   *iii.*  *Salaman and Grunfeld's Quasi-Judicial Immunity*

Salaman and Grunfeld contend that they are entitled to immunity for the judicial tasks they undertook as Special Masters pursuant to the orders of the Orphans' Court.  Salaman Mot. Dismiss 6-7; Grunfeld Mot. Dismiss 8-12.  Plaintiff responds that Salaman and Grunfeld are not entitled to immunity because the Orphans' Court lacked jurisdiction over "the Beer Hut

inventory" or "Plaintiff's non-probate real estate and business."  Resp. Salaman Mot. 12; Resp.

Dugan and Grunfeld Mots. Dismiss 1-2. The Court agrees with Salaman and Grunfeld on this

issue.

In the Third Circuit, "[q]uasi-judicial officers, who act in accordance with their duties or

at the direction of a judicial officer," are entitled to "absolute 'quasi-judicial' immunity." *Stout

v. Naus*, No. 09-0380, 2009 WL 1794989, at \*3 (M.D. Pa. June 23, 2009) (internal citations

omitted); *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 772 (3d Cir. 2000).  This quasi-judicial

immunity has been extended to court-appointed Special Masters performing "judicial duties."

*Wallace v. Abell*, No. 07-4918, 2008 WL 2833927, at \*2-3 (E.D. Pa. July 22, 2008).

In this case, plaintiff seeks damages for "conduct prescribed by [court] order." *Williams

v. Barkman*, No. 13-1805, 2014 WL 1315992, at \*5 (W.D. Pa. Mar. 31, 2014).  On July 18,

2013, the Orphans' Court ordered Salaman to oversee the operation of Beer Hut.  *See In re

Estate of Gloria Deckard*, No. 180 DE of 2013 (Phila. Cty. C.C.P. July 18, 2013).  On January

30, 2015, the Orphans' Court ordered the seizure and sale of the Beer Hut business and its

inventory, and authorized Grunfeld "take all action he deems necessary and appropriate in the

prompt liquidation of the assets of Beer Hut."  *See In re Estate of Gloria Deckard*, No. 180 DE

of 2013 (Phila. Cty. C.C.P. Jan. 30, 2015).  The Orphans' Court also ordered that persons other

than the Special Master vacate the premises and "not reenter except with permission."  *Id.*

Accordingly, Salaman and Grunfeld are entitled to quasi-judicial immunity for actions taken

pursuant to these orders.

Though courts make an exception to judicial immunity for actions "taken in the complete

absence of all jurisdiction," "where a court has some subject matter jurisdiction, there is

sufficient jurisdiction for immunity purposes." *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d

Cir. 2000) (internal citations omitted).  In this case, because the Orphans' Court had subject matter jurisdiction over the administration of Gloria Deckard's Estate, Salaman and Grunfeld are entitled to immunity for their actions taken pursuant to the Orphans' Court's orders.  *See, e.g.*, *Willis v. O'Toole*, No. 18-290, 2019 WL 1585099, at *7 (W.D. Pa. Mar. 8, 2019) (recognizing judicial immunity enjoyed by Orphans' Court judge where the court "had subject matter jurisdiction over the underlying dispute.").

For the foregoing reasons, the Court concludes that Salaman and Grunfeld are immune from suit for plaintiff's claims in Count II of the 1st Amended Complaint that arise out of defendants' actions taken pursuant to the Orphans' Court's orders.

### iv.  Conclusion

Based on the foregoing, the Court dismisses all claims against Grunfeld and Salaman in Count II of the 1st Amended Complaint with prejudice.  Amendment would be futile due to the absence of subject matter jurisdiction based on the *Rooker-Feldman* doctrine and the probate exception.  *See U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 517 ("Repleading is futile [after dismissal for lack of subject matter jurisdiction] because the legal inadequacy cannot be solved by providing a better factual account of the alleged claim.").  Amendment would also be futile because plaintiff seeks to sue Grunfeld and Salaman for "acts undertaken by them in their judicial capacities," for which they are immune.  *Williams*, 2014 WL 1315992 at *6.

## VI.   CONCLUSION

Based on the foregoing, the Court grants the motions to dismiss filed by Citizens Bank, the Aclaim defendants, and the Penn National defendants in Civil Action No. 17-5182, and dismisses all claims against those defendants in the 2nd Amended Complaint with prejudice. The Court also grants the Motion to Dismiss filed by Worldpay in that case and dismisses all

claim against it in the 2nd Amended Complaint without prejudice to plaintiff's right to file such claims in the proper venue.  The caption of Civil Action No. 17-5182 is amended so as to delete reference to Citizens Bank, the Aclaim defendants, the Penn National defendants, and Worldpay as defendants.

The Court grants the motions to dismiss filed by Dugan, Grunfeld, and Salaman in Civil Action No. 19-2001, and dismisses all claims against those defendants in the 1st Amended Complaint with prejudice.  The caption of Civil Action No. 19-2001 is amended so as to delete reference to Dugan, Grunfeld, and Salaman as defendants.

The remaining claims in Civil Action No. 17-5182 are those asserted against the Emory defendants in Counts I and II of the 2nd Amended Complaint.  The remaining claims in Civil Action No. 19-2001 are those asserted against the Emory defendants in Count I of the 1st Amended Complaint and those asserted against Linda Hee in Counts II and III of that Complaint. None of the remaining claims were the subject of a motion to dismiss.

An appropriate order follows.